The opinion of the court on the merits was delivered by Spencer, J., and on the application for a'rehearing by Manning, C. J.
Spencer, J.
In August, 1876, the plaintiff, alleging himself administrator, and a forced heir of John W. and Mary H. Brown, deceased, filed this suit against his sister, the defendant, and prays that a certain tract of land on the west side of Red river in-the parish of Red River, in defendant’s possession, be decreed to belong to the successions of said decedents ; that the act of transfer thereof made by John W. Brown to the defendant on February 13,1868, be declared a simulation made in fraud of creditors, “ and a donation in disguise, and null and void.” Defendant, alleging that the plaintiff’s demands were inconsistent, moved that he be required to elect between them. The district judge overruled the motion, on the ground that the action was, in substance, one en declaration de simulation. We think that it is inconsistent to allege that an act is a pure simulation and a donation in disguise. A simulated act is nothing. It is “ vox, et praeterea nihil,” while a disguised donation is a reality, and may be and often is a good and valid contract.
But we think the subsequent proceedings in the case show that both parties limited the contest to the single issue of simulation vel non. The defendant put at issue “the question of simulation alone,” and plaintiff confined his case to that issue, and the value of rents and revenues after the death of John W. Brown, in 1873.
This is a family quarrel, and, as might be expected, there is much contradictory swearing, the family being about equally divided between the contestants. Some of the witnesses, especially the plaintiff and his *967 brother, W. W. Brown, can hardly be said to have testified. They delivered set orations and elaborate arguments, instead of depositions. The protestations of defendant’s counsel,and a record bristling with exceptions to the admissibility of this argumentation, seem to have been unavailing to stop this torrent of declamation. It would be an endless task to attempt a detailed notice of all these objections and exceptions, running through several hundred pages of closely written record. We have gone carefully through it all, and will state the facts as they impress us.
On the thirteenth February, 1868, John W. Brown by authentic act conveyed to his daughter, Elizabeth A. R. Brown, the land in question, for the price and sum, as declared in the act, of $1617, cash in hands paid. The daughter lived in the house on the east side of Red river, with her father and mother, the latter being very infirm and paralyzed. The father after the sale continued to manage and control the place sold on the west side, rented it out to tenants, and collected the rents, and disposed of them about as he pleased. The leases were usually made by him in the name .of his daughter, but until his death in 1873 she seems to have taken no active control, at least no ostensible control. It is shown that at the date of this transfer John W. Brown owed a debt to Chaffe & Brother of some $2000, and another small debt of about $150. There is no pretense that he was then insolvent. In fact, if plaintiff and his witnesses are credible, he was five-fold solvent. In October, 1870, Chaffe & Brother brought suit against Brown and Sherrod for $1050, balance due them, and obtained judgment therefor in January, 1871, against the defendants in solido.
Plaintiff and his brother, W. W. Brown, and his sister, Mrs. Turner, and her husband swear that it was well understood in the family that this transfer was a simulation, and they repeat many conversations of their father to that effect; and J. N. Brown details one which he says took place in the presence of Elizabeth, the defendant. The defendant and her brother, T. C. Brown, and sister, Mrs. Giddens, swear to the verity and reality of the sale, and the defendant flatly denies the plaintiff’s statement as to her ever being present when her father said the sale was simulated.
The evidence shows that the consideration of this transfer was not cash, as declared by the act, but consisted of three notes, two for $400 each, with six or eight years interest thereon, and one for $176. This last note is shown to have been held by plaintiff, J. N. Brown, against his father, who requested him to let him have it for Elizabeth, in order to make up a more ample price for the property. The two notes for $400 each were predicated on a sum of $600, which John W. Brown collected and received in 1860 and 1861, on account of salaries due Elizabeth as a public school teacher. Shortly befoie the transfer he delivered her *968 his said two notes for $400 each, in settlement of this debt. There is no doubt or dispute about the fact that he received and collected this sum of $600, as stated, and that she was at the time sui juris; but her brothers, J. N. and W. W. Brown, argue that when she graduated some years before her father bought her a fine piano, and that this $600 must be considered as a payment for that. That she lived with her father, and was maintained by him like the other children, etc. Per contra, the defendant shows that her services in the household, and her constant attention to her infirm mother were worth far more than her support. Suffice it to say that her father seems to have taken the same view, and gave his notes for an undoubted debt due her. If he saw proper to offset her support by her services he had a right to do.so, and from the evidence we think he acted justly in so doing.
There was then a real and valid consideration for this transfer, to the extent of this $600 and interest, evidenced by these notes. The transaction was, therefore, not a simulation. It may have been intended to defraud creditors. We rather think it was. The plaintiff and his witnesses declare that his purpose was' to put his property out of their reach ; and J. N. Brown, plaintiff, and his brother, W. W. Brown, swear in effect that they counseled and consented to his doing so. It is not clear but that J. N. Brown and W. W. Brown, under these facts, were parties to this transaction, and are estopped from disputing its verity. “ Nemo allegans suam turpitudinem esi audiendus.”
The possession of the vendor after the sale creates, as to third persons, a presumption of simulation, unless the verity of the transaction be shown. C. C. 2480, 1921. That presumption has been rebutted in this case by showing that there was a consideration, perhaps inadequate, yet real and actual.
Plaintiff contends that this was not a sale, but a dation en paiement, and without effect for want of delivery. C. C. 2656.
The reason of this rule is not at first glance very apparent, but we take it to be that a payment is never complete until the thing to be paid is delivered. But the delivery of immovables is always considered as accompanying the public acts by which they are transferred. C. C. 2479.
We are aware that in the case of Shultz vs. Morgan, Chaffe & Bro., intervenors, reported in 27 An. 618, Justice Taliaferro, as the organ of the court, seems to deny the application of this rule to transfers of immovables by authentic act by way of dation en paiement. He says that “ it is of the very essence of the dation en paiement that delivery should be actually made,” and cites as authority 3 M. 226, 269 ; 12 L. 375 ; 3 A. 280, and 20 A. 282.
Article 2656 is as follows : “ The giving in payment differs from the *969 ordinary contract oí sale in this, that the latter is perfect by the mere consent of the parties, even before the delivery, while the giving in payment is made only by delivery.” Justice Taliaferro interpolates the word “actual,” which is not found in 'the text of the'article. What constitutes delivery must be determined by reference to other provisions of the Code. The language of the court in 27 A. would be substantially correct when applied to immovables transferred by private act or to movables ; but we have seen that “the delivery of immovables is always considered as accompanying the public act transferring them, whether that act be a sale or dation en paiement. By reference to the cases cited as authority by the court, to wit: 3 M. 226, 269 ; 12 L. 375, and 20 A. 282, it will be seen that they were all cases relating to movables. The case in 3 A. 280 is not in point. It may be added that it is not very apparent whether the acts in question in the case in 27 A. above referred to were public or sous seign privée. But so far as the dictum of that case is applicable to public acts transferring immovables, whether they be sales or dations en paiement, we can not give it our assent.
Under this rule of article 2179, and in view of the fact that the transferee was a female living with her father, who attended to the leasing of the lands transferred, which lay across Red river, we think it clear that John W. Brown could not, without being a trespasser, have disputed her possession, or denied the delivery. O. C. 2479. If he could not, it follows that the rule of article 2656 requiring delivery in datipns en paiement had been complied with, since that rule applies as well between the parties as others. Moreover, the plaintiffs petition alleges without qualification that the “ said Elizabeth A. R. Brown is in possession of, and claims to be the owner of said lands, 'by virtue of said act of sale, etc.” Besides, the transfer is not attacked in the petition as a dation en paiement inoperative for want of delivery, but as a simulated sale.
The plaintiffs objection that defendant could not prove what was the real consideration of the transfer; that the act declared the considei - ation to be cash, and that it was not competent to show that it was notes ■of the vendor, is not well taken. C. C. 1900. “ If the cause expressed in the contract should be one that does not exist, yet the contract can not be invalidated if the party can show the existence of a true and sufficient consideration.”
When a contract, therefore, is attached on the ground that the expressed consideration does not exist, or that there "was no consideration for it, the party may show other consideration than that expressed in the contract. The court below improperly sustained said objection, and we have given effect to said evidence, which is in the record. Under the view wm have taken it is unnecessary to notice the other bills of *970 exception in the record, as the matters to which they relate do not affect the grounds o£ our decision.
While, therefore, we hold that the transfer by John W. Brown to the defendant was not a simulation, it may have been intended as a fraud on his creditors, or it may have been to a large extent a gratuity to her, and prejudicial to the reserves of his forced heirs. The action of the creditors to annul is doubtless barred, but the forced heirs may have right to proceed against defendant for reduction and collation, in so far as the transfer may have been gratuitous.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled and reversed, and it is now decreed that plaintiff’s demands be rejected at his costs in both courts.